## Case No. 11,922.

### In re ROBERTSON.

[See Case No. 11,921.]

## Case No. 11,923.

### The ROBERTSON.

[8 Biss. 180;[1] 10 Chi. Leg. News, 220.]

District Court, E. D. Wisconsin. March, 1878.[2]

MARITIME LIENS—SUBROGATION—PAYMENT OF DECREE.

1. This vessel, while in a foreign port, was seized for supplies furnished. The libellant in this case, at the request of the owner, signed the usual stipulation for the release of the vessel, and afterwards paid the amount which was decreed against the vessel: *Held*, that by signing such stipulation and paying such decree he did not become subrogated to the rights of the former libellant so as to acquire a lien upon the vessel, and that the libel could not be maintained.

2. A distinction exists between an actual advancement of money to clear off a lien, with a resulting hypothecation of the ship to the person making such advancement, and the act of joining with the principal debtor in an obligation to pay at a future time upon certain contingencies.

In admiralty. Libel by William Young against the steam barge Robertson to recover $368.13, which he had paid on a decree against him as surety on a bond given to release the barge from seizure under a former libel for supplies.

Van Dyke & Van Dyke, for libellant.
H. H. Markham, for respondents.

DYER, District Judge. On the 14th day of August, 1876, the steam barge Mary R. Robertson, a foreign craft, hailing from a Canadian port, and owned by Frederick A. Robertson, was at the port of Milwaukee, and was there seized under a monition issued out of this court upon a claim for supplies furnished the vessel by Frederick G. McDowell and others. The owner interposed his claim of ownership in the action, and being a stranger at the port of Milwaukee, and without money or credit, applied to the present libellant to sign a stipulation for the release of the barge from the custody of the marshal, and thus enable her to proceed on her voyage. Upon repeated solicitations, and upon the understanding with the owner that he should have—and in the belief that by operation of law he would have—a lien upon the barge, the libellant, Young, executed the required stipulation, which was filed in the proceedings then pending, and the barge was enabled to proceed upon her then pending voyage. By virtue of the stipulation thus made, Young became liable to pay the claim of the original libellants if decree should be rendered in their favor. Subsequently such a

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case unreported.]

decree was entered, execution was issued, and on the 19th day of September, 1876, Young was compelled to pay. and did pay, the amount of the decree, with interest and costs, amounting in all to $368.13. To induce the present libellant to sign the stipulation, in addition to the representation and understanding that libellant would have a lien on the vessel, the owner, Robertson, agreed, for purposes of further indemnity, to deposit $250 with William Young & Co. as soon as he could obtain it, and thereupon drew a draft for that amount upon himself, payable on demand at Goderich, Canada, which was dishonored and never paid. Young's dealings in the transaction were entirely with the owner of the vessel. The answer of the present claimant alleges that in March, 1877, the barge was sold at public auction at a Canadian port under and by virtue of a mortgage then existing upon the vessel, and they became the purchasers and paid full value without knowledge or notice of the present libellant's claim. These allegations of fact are not disputed.

The libellant files the present libel against the barge to recover the amount paid by him upon the former decree in favor of McDowell and others, insisting that by virtue of the proceedings before recited he has a lien which may be enforced in admiralty. The claimants, on the other hand, insist that libellant's remedy is not in rem against the vessel, but is one that is only enforceable against Robertson, the former owner.

Various propositions stated by the learned counsel for the libellant in his argument are indisputable. There is no doubt that a maritime lien may arise or be implied for necessary advances made and necessary supplies furnished on the request of the owner of a vessel. This was held in the cases of The Guy, 9 Wall. [76 U. S.] 758, and The Kalorama and The Custer, 10 Wall. [77 U. S.] 204, 215. In the two last mentioned cases the proposition is thus stated: "It is no objection to the assertion in the admiralty of a maritime lien against a vessel for necessary repairs and supplies to her in a foreign port, that the owner was there and gave directions in person for them, the same having been made expressly on the credit of the vessel."

It is also well settled that, "where proof is made of necessity for the repairs or supplies, or for funds raised to pay for them by the master, and of credit given to the ship, a presumption will arise, conclusive in the absence of evidence to the contrary, of necessity for credit." The Grapeshot, 9 Wall. [76 U. S.] 129. Numerous cases cited in the brief of counsel also affirm the rule that a maritime lien may exist for moneys advanced to purchase or pay for necessaries supplied to a ship, in favor of the person making such advances, in cases where such lien existed or would arise for the necessaries themselves. As the rule is stated in Thomas v. Osborn, 19 How. [60 U. S.] 28, "it is not material whether the hypothecation—express or implied—is made directly to the furnishers of repairs and supplies, or to one who lends money on the credit of the vessel, in a case of necessity, to pay such furnishers."

Invoking these general principles. counsel for libellant claim that the exigency in which the barge was placed by reason of her seizure under the libel in favor of McDowell, the vessel being in a foreign port and the owner being without money or credit, created a case of necessity, and that the transaction on the part of libellant as the signer of the stipulation which secured the release of the barge, was in effect an advance of money on the credit of the vessel for the payment of necessary supplies, and that within the principles before stated, a maritime lien was created which may now be enforced against the vessel; that the signing of the stipulation and the ·ultimate payment of the money was in effect one continuous transaction, and that the right to the lien accrued when the stipulation was signed, and the right to enforce it arose when the decree was paid by the stipulator; furthermore, that libellant became subrogated to the rights of McDowell, the original libellant and furnisher of supplies, and that upon the equitable principles of substitution. he may enforce against the vessel the same security and remedy as that held by the original creditor. I was impressed on the argument with the force of this view of the case. But in testing its soundness, serious difficulties arise. If by signing the stipulation and paying the amount of the McDowell decree, libellant was placed in the position of a party who, in a case of necessity and on the credit of the ship advances money for supplies or to pay the furnisher of supplies, thus enabling the vessel, then in a foreign port. to pursue her voyage, it would seem that he should have a lien. If he is in the position of a party who advances to the master or owner, money to pay the wages of a seaman, thereby becoming subrogated to the rights of the seaman as against the vessel and acquiring as security for his advance the seaman's lien, then the question is free from difficulty. Counsel for the respondents admits that if the libellant, instead of signing the stipulation had at the time advanced the money to pay the McDowell claim, he would have been subrogated to McDowell's rights and have a lien.

The question which the case suggests, seems to center in the inquiry, when did libellant's lien, if any, accrue? When and by virtue of what acts did he become subrogated to the rights of the party holding the primary claim and lien? The vessel was under seizure. He executed a stipulation by operation of which the vessel was released

The stipulation or bond took the place of the vessel. The original libellant could no longer pursue the vessel. The liability of the stipulator became substituted for the original lien. The lien was then gone, the debt, however, remaining unpaid. Did Young then acquire a lien upon the vessel, or become subrogated to any rights of the then libellant McDowell? It seems quite plain that he did not, for the reason that he then parted with nothing. Up to that time he had made no advances for payment of the claim out of which the original maritime lien sprung. He had done that which in the law gave to the owner a release of his vessel, and by substitution of his voluntary individual liability debarred the original creditor from further asserting a lien upon the vessel. But at this stage of the procedure there could be no subrogation to the creditor's rights as against the vessel, because as yet there was no basis for application of the principle of subrogation. He was surely not in the position of a party who has made actual advances of money at the request of the master or owner to pay the furnisher of supplies. He had simply thus far involved himself in a personal contingent liability for the debt upon which suit was brought, and by force of law and the practice in admiralty the vessel was free. A distinction is observable between an actual advancement of money to clear off a lien with a resulting hypothecation of the ship to the person making such advancement, and the act of joining with the principal debtor in an obligation to pay at a future time upon certain contingencies; and the mere execution by libellant of the bond for the release of the vessel, afforded no reason for applying the rule that he who at the request of the owner or master on the credit of the ship advances moneys to pay the furnisher of supplies, may have a lien, nor for application of the principle of subrogation.

If any rights at any time accrued to libellant against the vessel, it must have been when he paid the decree. But was that a payment for the benefit of the boat? Was it not rather a payment for the benefit of the owner, and nothing more? If at any time libellant could have been subrogated to any rights of the original creditor it must have been when he satisfied that creditor's claim by payment of the decree. But at that time what lien or security had McDowell upon the vessel? As before stated, when the stipulation was made and the vessel released, the lien was extinguished and gone. The creditor's security was the present libellant's bond and nothing more. The stipulation had, so far as McDowell was concerned, taken the place of the boat. This being so, to what rights or remedy of the creditor against the boat could Young be subrogated? The attitude of the case was then very different from what it would have been had libellant in the first instance, on request of the owner, advanced the money to pay the McDowell de-

mand, for then clearly he would have been at once subrogated to all the rights of the creditor as against the boat. As surety upon the stipulation, libellant upon well settled principles of equity, might, on payment of the decree, avail himself of any security on the boat which the creditor had; but his own act of executing the bond left no such security of which he could take advantage.

The case of The Aurora, 1 Wheat. [14 U. S.] 105, was cited by counsel for libellant. The ruling in that case was that "a bona fide creditor, who advances his money to relieve a ship from an actual arrest on account of * * * debts, may stipulate for a bottomry interest, and the necessity of the occasion will justify the master in giving it, if he had no other sufficient funds, or credit to redeem the ship from such arrest." It will be seen that the case involved the question of a lien by bottomry.

In The J. R. Hoyle [Case No. 7,557], the boat was attached and held in custody for a debt. On application of the owner an advance of money was made by a third party to pay the debt and release the boat. It was held that the person making such advance had a lien which he could enforce in rem, in a court of admiralty. This was but an application of the doctrine of which I have spoken, that a person who lends money for the use of a ship in a foreign port has the same lien on the vessel as material men have. And if libellant in the case at bar, to relieve the barge Robertson from seizure, had then advanced the money to pay the McDowell claim, I do not doubt he would have had a lien, because the case would then have been within the principle which supports the ruling in the case of The J. R. Hoyle [supra].

These cases and others, cited in the brief of counsel, among which is that of The Ocean Wave [Case No. 10,417], present facts so different from those we have here, that they cannot rule the case at bar. As libellant did not acquire a lien, by alone signing the stipulation which effected a release of the vessel, nor by alone paying the decree, I do not perceive how a lien can result from the acts taken together, if indeed they can be so considered. Nor can I attach much weight to the fact, that the owner of the barge represented to and orally agreed with libellant that he should have a lien on signing the stipulation and thereby releasing the boat. If the law did not give to libellants a lien, if the transaction was not one out of which a maritime lien would spring, then any such agreement of the parties as is stated, would be ineffectual to create a lien, especially as against innocent subsequent purchasers for value.

This case, in its peculiar features, appeals strongly to the equitable favor of the court. But, as was observed by Sir Wm. Scott in the case of The Mentor, 1 C. Rob. Adm. 181. while we may regret the loss to which the party has been subjected, and even seek for

principles upon which the relief asked may be granted, it must be on legal grounds only that redress can be given. And if they are wanting, considerations of abstract equity cannot supply their place. Moreover, to sustain this libel would be to grant relief to one innocent man at the expense of others now owners of the vessel and equally innocent. When libellant incurred the obligation which ultimately he had to meet, he had it in his power to exact security that should amply protect him, and having omitted to do so, in the language of the court in a case cited on the argument, he can only be considered as now possessing the rights which arise against the person for whom he incurred the obligation, from having paid money for him which he had voluntarily and without consideration conditionally undertaken to pay. Libel dismissed.

On appeal, this judgment was affirmed by Mr. Justice Harlan [case unreported].

---

ROBERTSON (BLAKE v.). See Cases Nos. 1,500 and 1,501.

ROBERTSON (BROWN v.). See Case No. 2,027.

ROBERTSON (CARSON v.). See Case No. 2,466.

ROBERTSON (CHESAPEAKE & O. CANAL CO. v.). See Case No. 2,652.

ROBERTSON (DIBBLE v.). See Case No. 3,882.