## TOWLE v. GREAT SHOSHONE & TWIN FALLS WATER POWER CO.

### (District Court, D. Idaho, S. D.   May 1, 1916.)

1. CORPORATIONS  ⬦⟶566(1)—INSOLVENCY—PREFERRED   CLAIMS—RIGHTS OF SURETY.

      A surety on the supersedeas bond of a public service corporation, having been held liable, is not generally to be deemed a preferred creditor in event of insolvency of the corporation.

      [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2283; Dec. Dig. ⬦⟶566(1).]

2. CORPORATIONS  ⬦⟶566(1)—INSOLVENCY—PREFERRED  CLAIM—APPEAL  BOND.

      Where, at the time judgment was recovered against a public service corporation, it was apparently solvent and might have satisfied the same, a surety on a supersedeas bond, which enabled the corporation to appeal without execution being levied on its property is not, on subsequent insolvency, entitled to be preferred to other creditors, on the theory that the giving of the bond enabled the corporation to continue as a going concern.

      [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2283; Dec. Dig. ⬦⟶566(1).]

3. CORPORATIONS  ⬦⟶566(1)—PREFERRED  CLAIMS—RIGHT  OF  SURETY—PREFERENCE.

      Defendant purchased from another public service corporation an electric line, which, owing to negligent methods of construction, ignited a barn. The contract of purchase provided for payment of part cash, and the balance from month to month out of the income. After the fire, defendant desiring to appeal from an adverse judgment, petitioner became surety on its supersedeas bond. Judgment against defendant being affirmed, petitioner was compelled to satisfy the same. Rev. Codes Idaho, § 2769, as amended in 1909 (Laws 1909, p. 163) gives corporations the power to hold such real and personal estate as may be required for their corporate purposes and to sell, assign, transfer, mortgage, etc., real or personal property of the corporation. Const. Idaho, art. 11, § 15, declares that the Legislature shall not pass any law permitting the leasing or alienation of any franchise, so as to relieve the franchise or property held thereunder from any of the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation or use of the franchise or its privilege. After the fire and including the period of receivership, defendant's income from the system purchased aggregated considerably more than the amount petitioner was compelled to pay. *Held* that, as the owner of the burned barn might have proceeded against the public

---

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

service corporation which sold the property, it is inequitable that other creditors of defendant have the benefit of income received from the property without paying the amount of such judgment; hence, there being proceeds of property acquired from the first public service corporation in the hands of a receiver, petitioner is entitled to priority therein.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2283; Dec. Dig. ☜566(1).]

In Equity. Suit by Guy. I. Towle against the Great Shoshone & Twin Falls Water Power Company, in which the Boise Title & Trust Company petitioned for allowance of a preferred claim. Petition granted.

S. H. Hays, of Boise, Idaho, for petitioner.
Wyman & Wyman, of Boise, Idaho, for certain. creditors.

DIETRICH, District Judge. A petition is presented by the Boise Title & Trust Company in a creditors' suit brought against the judgment debtor for the purpose of administering its insolvent estate and applying the proceeds thereof to the payment of its debts. Concurrently with the creditors' suit a foreclosure suit has been prosecuted by the trustee for the bondholders, and under the decree therein all of the property of the judgment debtor has been forclosed upon and sold, but final distribution of the proceeds of the sale has not yet been made. The petitioner is an Idaho corporation, having, among other powers, that of becoming surety for litigants upon appeal and supersedeas bonds. Upon April 24, 1914, in one of the state courts, a judgment was entered against the defendant company in favor of one Newman for $1,079.80 as damages for the destruction of certain property as the result of faulty construction of an electric transmission line. The line had been installed by a company known as the Shoshone Light & Water Company, but at the time of the fire it was being operated by the defendant under a contract by which it was given possession of, and was to purchase, the system of which the line was a part. Newman having threatened to issue execution, the defendant sued out an appeal to the Supreme Court of the state, and in that connection the applicant, upon the request of the defendant, and presumably for a valuable consideration, executed an appeal and supersedeas bond. The judgment has been affirmed, and the applicant now prays that the receiver be required to satisfy it. The prayer is opposed by the receiver and certain creditors of the estate, secured and unsecured.

The disposition of the petition involves two questions: (1) Is there a rule or principle by which a surety for a public service corporation is generally to be deemed to be a preferred creditor in case of its insolvency? And (2) if there is no such general rule, are the circumstances here exceptional and of such character as to warrant the relief prayed for?

[1] The first question it is thought must be answered in the negative. While in the few and conflicting cases upon the subject some support may be found for the affirmative, the weight of both authority and reason is in my judgment against such a rule. In what the petitioner puts forth as the leading case upon the subject, Union Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825, the

conclusion reached was the result of what were deemed to be exceptional circumstances widely differing from those here involved. In Jones v. Central Trust Co., 73 Fed. 568, 19 C. C. A. 569 (6th C. C. A.), the syllabus fairly states the facts:

"Certain property of the railroad company, which was covered by mortgages, was attached by a creditor who had secured a judgment against the company. Thereupon, in order to preserve the unity of the property and keep the railroad a going concern, the trustee in the mortgages caused such property to be replevined and bonds to be given, with sureties, for the return of the property, or for the payment of its value, if adjudged to be subject to the attachment. The property was ultimately adjudged to be so subject, but, in consequence of its having been taken into possession by a receiver appointed in a foreclosure suit instituted by the trustee, it was impossible for the sureties on the replevin bonds to return the property, and executions were directed to issue against them for its value."

Under these circumstances it was held that it was proper to direct the receiver to pay the claim in preference to the mortgage lien. The facts were not closely analogous to those in the instant case, and in the light of the later decision of the same court in Whiteley v. Central Trust Company of New York, 76 Fed. 74, 22 C. C. A. 67, 34 L. R. A. 303, manifestly the inference cannot properly be drawn that the court intended to establish or recognize the general rule under consideration. In the Whiteley Case Judge Lurton analyzes the Morrison Case, and, after considering the question at length, reaches the conclusion that a surety upon a supersedeas bond given by a railroad company while apparently solvent and not in default, if compelled, after the insolvency of the company, to pay the judgment appealed from, is not entitled to be repaid from the proceeds of the property of the company in preference to the mortgagee thereof. This conclusion is clearly supported by the decision of Justice Brewer while sitting as Circuit Judge in the case of Blair v. Railroad Co. (C. C.) 23 Fed. 522, and by the more elaborate opinion of Judge Jenkins in Farmers' Loan & Trust Co. v. N. P. R. Co. (C. C.) 68 Fed. 36.

The decision rendered by Judge Hanford of the Washington district in the Farmers' Loan & Trust Company Case (C. C.) 71 Fed. 245, strongly tends to support the petitioner's contention, but the ultimate conclusion there largely, if not entirely, rests upon the assumption that the primary obligation, the enforcement of which was stayed by the bond under consideration, was of a preferential character, and I entertain no doubt that, if the primary obligation is of such character, a surety who pays the same may claim preference under the principle of subrogation. Judge Hanford's view was that a claim for personal injury arising out of the operation of a railroad is of a preferential character, and while I have very strong sympathy with that view, the established rule in this jurisdiction is to the contrary. In Farmers' Loan & Trust Co. v. Watts, Intervener (C. C.) 74 Fed. 431, there is an expression of dissent by Judge Gilbert from Judge Hanford's reasoning, followed with the suggestion that his conclusion could be sustained upon other grounds. The question here under consideration was not before Judge Gilbert, and the remark referred to was made merely for the purpose of distinguishing Judge Hanford's decision. While

an extract quoted in petitioner's brief from Gay v. Hudson River Co. (C. C.) 182 Fed. 904, tends in a general way to support its view, the preference sought in that case was denied, and the substantial reasoning of the opinion militates strongly against the petitioner. The reasoning is so pertinent to the facts here that I quote somewhat at length:

"When the bond was executed and delivered, the Hudson River Electric Power Company, so far as appears, was doing business in the usual way and was apparently solvent. No execution had been issued, and no property had been levied upon, and the corporation was not in default in the payment of its interest or current expenses so far as appears. The mortgage bondholders had no right to possess themselves of the mortgaged property or to interfere with the operations of the corporation at that time. It is probably true that an execution would have been issued and a levy made if the judgment had not been paid or the bond given; but, as already stated, it is not charged that the corporation did not at the time have money properly applicable thereto with which to pay the judgment, which was for damages for negligence, and not an ordinary operating expense. Of course, the negligence was in operating the business and gave rise to the cause of action, and in such sense was an operating liability. But still there is no allegation that current earnings, which should or which might have been used to pay this liability, were diverted to the purchase of property which has gone under the lien of the mortgage, or to the permanent improvement of such property, or in reduction of the bonded debt. Suppose the claim sued upon had been for property purchased and used in the business of the corporation generally, for repairs, changes, and operation, and defense had been made, judgment rendered against the corporation, and a bond given to stay execution on appeal, and the judgment affirmed and payment made by the sureties. Would the sureties be entitled to a preference over the mortgage bondholders? I think not. There would be no more equity in such case than in most cases where litigation is had, judgment obtained, and bonds given to stay execution, which judgments the sureties are compelled to pay if the principal does not."

Of like import is the case of Pennsylvania Steel Co. v. New York City R. R. Co., etc. (C. C.) 165 Fed. 485. I quote from the syllabus:

"The surety on supersedeas bonds given by a street railroad company on appeals from judgments against it, which has been compelled to pay such judgments on their affirmance after the insolvency of the company, is not entitled to rank as a preferred creditor in the insolvency proceedings against the company with creditors having claims for supplies furnished to keep the road in operation."

No other cases have been called to my attention. It would be an extremely dangerous doctrine, and would render the securities of public service corporations most precarious, if the mortgagor could, by permitting suit to be brought and judgment obtained against it, and then taking an appeal and furnishing a supersedeas bond, give priority over the bonds to an indebtedness which otherwise has no substantial features of a preferential claim.

[2] Are the circumstances such as to make the claim exceptional and to warrant its payment in preference to other claims? The petitioner lays great stress upon the contention that the bond was given to protect and preserve the property of the company and to enable it to continue as a going concern. But as pointed out by Judge Ray in the Gay Case, the company here was apparently solvent at the time the judgment was entered, and could, if it saw fit so to do, have paid the claim. The assistance of the petitioner was therefore not neces-

sary to enable it to preserve the unity of its property, or to continue as a going concern, or to perform its obligations to the public. Apparently it was doing business in the usual way and was solvent. No execution had been issued, and no property had been levied on, and it was not in default in the payment of its interest or current expenses. It is altogether probable that an execution would have been issued and a levy made, had the company failed to pay the judgment or give a supersedeas bond; but that fact establishes no strong equities in favor of the petitioner. In the argument it was stated, and not denied, that the petitioner was in the business of furnishing bonds for a consideration, and therefore it is to be assumed that it was paid the ordinary charge for such a bond. Suppose that, instead of taking an appeal and furnishing a supersedeas bond, the judgment debtor had applied to a bank for a loan, and with the money thus secured had satisfied the judgment, the substantial equities in favor of the bank would, to say the least, be quite as strong as those in favor of the petitioner here, but in no view of the law could it for such reason alone be recognized as a preferred creditor.

[3] In another aspect of the case, however, the petitioner's claim is quite distinctive. As already suggested, the electric line by which the fire was caused was constructed by the Shoshone Light & Water Company. It appears that the line passed diagonally across block 40 in the village of Shoshone, and across Newman's property, and that, instead of erecting suitable poles, the company, in violation of Newman's rights and without his knowledge or permission, attached the wires to his corrugated iron barn, and in such a manner that as they swayed back and forth they came into contact with the iron, and as a result combustible material in the barn was ignited. As further suggested, at the time of the fire the judgment debtor had possession of the system by permission of the Shoshone Light & Water Company under a contract to purchase. By the terms of that contract it paid a certain amount in cash and the balance was to be paid from month to month out of the income arising from the operation of the system. Among other things it is stipulated:

"That the property of said Shoshone Light & Water Company was acquired by the Great Shoshone & Twin Falls Water Power Company out of the income from said property, payments being made each month, an amount in excess of the claim of the petitioner having been paid in this way prior to the execution of said bond, and a large amount in excess of petitioner's claim having been paid subsequent to the execution of said bond and before the appointment of a receiver herein, and that since the receivership herein the receiver has paid out of the income of said property on account of the purchase price therefor a sum in excess of $7,000."

Now it is clear, I think, that under the averments of Newman's complaint he had a right of action against the Shoshone Light & Water Company, as well as against the Great Shoshone & Twin Falls Water Power Company. He charged both the negligent construction and the negligent operation of the system, and for the negligent construction the Shoshone Light & Water Company alone was responsible. Whether under a more or less generally recognized principle, whereby

the lessor of a public utility is held responsible to the public for the negligent operation thereof by its lessee, the Shoshone Light & Water Company is legally chargeable with the negligence of the Great Shoshone Company in operating the system, it is unnecessary to inquire. Certain it is that there is a very close connection between the two companies in their relation to the·accident, for substantially the only negligence charged against the Great Shoshone Company is the continued maintenance and operation of the line in the improper condition in which it was constructed.

Section 2769 of the Revised Codes of Idaho, as amended in 1909 (Session Laws 1909, p. 163), purports to confer upon corporations the power—

"to purchase and hold such real and personal estate as the purposes °of the corporation may require, not .exceeding the amount limited by this title, and to sell, lease, assign, transfer, mortgage, or convey, any rights, privileges, franchises, real or personal property of the corporation, other than its franchises of being a corporation; and to purchase, own, vote, sell or hypothecate the stock and bonds of other corporations."

But this provision must be read in the light of the limitations contained in section 15 of article 11 of the Constitution of the state, which declares that:

"The Legislature shall not pass any law permitting the leasing or alienation of any franchise so as to release or relieve the franchise or property held thereunder from any of the liabilities of the lessor or grantor, or lessee or grantee, contracted or incurred in the operation, or use or enjoyment of the franchise or any of its privileges."

Now it is by virtue only of the "after-acquired property" clause of the trust deed which has been foreclosed that the trustee and the bondholders acquired any lien upon the system thus purchased from the Shoshone Light & Water Company, and it is elementary that under such a mortgage provision the lien of the mortgagee attaches, subject to all valid claims against the property at the time the title thereto passes to the mortgagor. If, as he had a right to do, Newman had sued the Shoshone Light & Water Company alone, or had joined it with the Great Shoshone Company as codefendant, and had secured judgment against it, manifestly it could not, by transferring its property, have put it beyond his reach; he could have pursued it and insisted upon its application to the payment of his judgment. In so far as the Great Shoshone Company is concerned, doubtless the claim must be regarded as in every real sense an expense incident to the operation of the system. Certainly, in determining the net result of operation and in computing the net income, expenses of this character must be deducted from the gross income. But here we find that, instead of applying the income to the payment of this claim, a large part thereof has been devoted to the purchase price of the property, and now the property thus acquired and paid for has been sold for the purpose of discharging the bonds. As against Newman, and, for that reason alone, as against the petitioner here also, it would seem to be highly inequitable that the bondholders should thus receive the

proceeds of the property without first paying an obligation incurred by the mortgagor in operating it, for the purpose of procuring the very funds by which it was to be acquired and made available to the bondholders. In view of these considerations, I think that, even if the court were not legally bound, it would be strongly constrained by the equities, to recognize this claim as being superior to that of the bondholders, in so far as the proceeds of the sale of this property is concerned. But, however that may be, the execution and the placing in escrow of the deed by the Light & Water Company after it had negligently constructed the line, and the delivery of such deed to the Great Shoshone Company after the accident, could not, in the face of the constitutional provision above quoted, operate to defeat Newman's right to pursue the property conveyed and require that it first be devoted to the satisfaction of his claim. Seymour v. Boise R. Co., 24 Idaho, 7; 132 Pac. 427.

In giving the concrete relief warranted by this view, some difficulty is encountered by reason of the fact that the property thus acquired was sold, together with all other properties belonging to the judgment debtor, as a unit, and hence there is no way of ascertaining the amount which it brought. However, a part of the property purchased from the Shoshone Light & Water Company was the village water system, and this was later resold to the village by the Great Shoshone Company; the sale having been fully consummated since the appointment of the receiver. The receiver has now been paid in full by the village on account of the purchase price, and he now holds an amount greatly in excess of the claim. I see no reason why it should not be paid out of this fund.

Counsel for the petitioner may prepare an order directing the receiver to pay the full amount of the Newman judgment out of the funds in his hands received from the village of Shoshone.