FARMERS' LOAN & TRUST CO. v. NORTHERN PAC. R. CO.
(GRIGGS et al., Interveners).

(Circuit Court, D. Washington, N. D.   December 14, 1895.)

1. RAILROAD COMPANIES—RECEIVERS—PREFERRED CLAIMS.
   Pending appeal by a railroad company from a judgment against it, the road went into the hands of receivers appointed in a mortgage foreclosure suit. The judgment having been affirmed, the sureties on the appeal bond filed a petition alleging that suit had been brought against them on the bond, and asking that the judgment be paid. The trustee under the mortgage and the receiver consented to such payment, but it was resisted by the representatives of a minority of the junior bondholders. *Held,* that the petitioners having, by their execution of the bond, protected the funds of the railroad from abstraction by garnishment proceedings, and their liability not having become fixed for a definite amount until the condition of the bond was broken by the default of the company, which was after the appointment of the receiver, their claim was a current operating expense, accruing during the receivership, and hence should be paid out of current earnings.

2. SAME—RES JUDICATA.
   A decision made in another circuit on a petition filed by the receiver, to which these petitioners were not parties, refusing to allow the payment of their claim, was not conclusive as against them.

Suit by the Farmers' Loan & Trust Company, a New York corporation, against the Northern Pacific Railroad Company. On petition by Chauncey W. Griggs and Addison G. Foster, interveners, asking that a certain judgment be paid by the receiver Andrew F. Burleigh out of current earnings.

In the month of March, 1889, the supreme court of the territory of Washington affirmed a judgment theretofore rendered in favor of David O'Brien, for $6,000 and costs, against the Northern Pacific Railroad Company, for a personal injury sustained through alleged negligence of the railroad company. Railroad Co. v. O'Brien, 1 Wash. St. 599, 21 Pac. 32. The case was then suspended by a petition for a rehearing until after completion of the organization of the state government, when the supreme court of the state of Washington, as successor of the territorial supreme corut, denied said petition for a rehearing, and the judgment became final. The railroad company then took a writ of error from the supreme court of the United States, and obtained a stay of execution during the pendency of the cause in the supreme court upon said writ of error, by giving a supersedeas bond in the sum of $12,000, duly executed by the company as principal, and by Chauncey W. Griggs and Addison G. Foster, the intervening petitioners herein, as sureties. In the month of November, 1894, the supreme court of the United States dismissed the cause for want of jurisdiction. 155 U. S. 141, 15 Sup. Ct. 30. Afterwards the receivers of the Northern Pacific Railroad Com-

pany applied to the United States circuit court for the Eastern district of Wisconsin for authority to pay the judgment so as to protect the sureties upon the supersedeas bond, which application was opposed by certain holders of mortgage bonds of the railroad company, and the application of the receivers was by the court denied. 68 Fed. 36. The intervening petitioners were not parties to the proceedings in the circuit court for the Eastern district of Wisconsin, and they now come in their own behalf, with their petition, to this court, alleging that a suit has been commenced against them upon the supersedeas bond, wherefore they pray this court to direct the receiver of this court to protect them from loss by reason of their liability upon said bond, and they have shown that said bond was executed at the request of the railroad company, as a matter of accommodation, and without any profit or advantage to themselves, and was of benefit to the railroad company and the holders of its securities in preventing the abstraction of the property of the company under a writ of execution, and the application of the proceeds thereof to the satisfaction of said judgment, which would have deprived the railroad company of all advantage of a review of the judgment in the supreme court of the United States, on said writ of error. Petition granted.

John B. Allen, for complainant.

J. M. Ashton, for receiver.

Herbert S. Griggs and George S. Brown, for intervening petitioners.

HANFORD, District Judge (after stating the facts). Payment of this claim has been assented to by the solicitors for the Farmers' Loan & Trust Company, representing the holders of the Northern Pacific securities, and also by the receiver's counsel. It has been resisted by the representatives of a minority of the junior bondholders, on the ground that payment out of the funds in the hands of the receiver advances the claim to the rank of a first lien, and to that extent displaces the mortgages given to secure the several issues of bonds. By such a preference, it is said the man who becomes a creditor without contracting for security has it, nevertheless; while he who contracts for security has it not. This argument assumes too much, for it treats railroad property the same as other private property, which the owner may use or not use, as he pleases, or mortgage or dispose of, without having regard for the public. But a railroad is a public highway, designed for public use. A corporation owning it enjoys a franchise which makes it in a measure a public servant, obligated to serve the public by keeping the road in operation. Railroads cannot be operated without incurring expense and liabilities for injuries accidentally inflicted. The laws of the country require that expenses in operating railroads, and liabilities arising from injuries committed in operation thereof, shall be paid; and he who takes a mortgage on a railroad does so with the knowledge that the railroad must be operated, and that its earnings must, so far as necessary, be absorbed in the payment of operating expenses, and discharging the burdens which the law places upon such property. Such burdens are alike incidental to such property when under mortgage as when unincumbered, and it is but fair to construe the mortgage as other contracts are construed, by giving effect to the manifest intention of the parties, in view of the consequences which they must have had in contempla-

tion. Now, when men take a mortgage upon a railroad, and leave it in the control of the mortgagor, it is plain that they intend that the mortgagor shall operate it, and pay the wages of employés, and bills for materials necessary to be used in operation, and all legal liabilities resulting from operation, and that only the surplus earnings remaining after such necessary payments can be available for the payment of mortgage debts. What the parties, at the time of making such contracts, intend to be done, they are deemed to have consented shall be done, and their contracts must be understood and construed accordingly. It has become a habit in this country for the courts, upon application of creditors, to take charge of railroads, when their owners become insolvent and unable to meet their contract liabilities, and perform their duties to the public in maintaining for public use these public highways. This is for the purpose of keeping the railroad in operation as a going concern. When a receiver steps in, he takes the property and its revenue; and the practice of the courts, generally acquiesced in, recognizes as a just rule, founded upon necessity, this: That the receiver shall, out of the revenue coming into his hands, pay the current expenses for wages and materials, and debts growing out of interchange of traffic, as the same become due, in the regular course of business, whether such current expenses be for work performed or materials furnished or liabilities contracted anterior to his accession to power as receiver or subsequent thereto.

There can be no reason or just ground for discriminating by allowing one class of current expenses, as, for instance, wages or money due to connecting lines for interchange of traffic, to be paid, and refusing payment for any other expense unavoidably incurred in the operation of the railroad, as, for instance, a judgment for a personal injury to a passenger or employé, or for damage to merchandise in transit. If it be said that the bondholders receive no benefit from the occurrences which give rise to a liability of the latter description, and therefore, as such a creditor has not contributed anything to enhance the value of the security, his claim should not be classed as superior to the mortgage, it may be said with equal propriety and force that the engineer, conductor, and trainmen, who, by running a train, have diminished the value of the railroad by wear and tear, without earning a surplus over the cost of the trip, do not in any way benefit the security holders by contributing anything to enhance the value of the securities. But no court would, before ordering wages to be paid, stop to inquire whether the services of this or that employé produced a profit to the employer. It is the operation of the railroad and preservation of the franchise which creates an obligation upon the owner to pay, irrespective of any question as to loss or gain. It has been often denied that liabilities for torts are in any sense operating expenses, or payable as such under recognized rules. But why not? When the law awards compensation for an injury sustained by reason of the operation of a railroad negligently, and the negligence is that of a servant, which, under the rule of respondeat superior, makes the owner liable to render compensation, the debt is an operating expense, be-

cause it is a consequence of operation; and, so far as the owner of the railroad is concerned, it is unavoidable, for it is not possible to secure, in the service of any railroad, servants and agents entirely free from human infirmities; and the liability which the law creates in such a case is not inferior in merit to a debt arising out of a contract. Claims for personal injuries inflicted in the operation of railroads while in the hands of receivers are generally treated as expenses of receivership, and payable as other operating expenses. This is so because the expenses of settling such claims are in fact operating expenses, and if operating expenses, when they arise during the administration of a receiver, they are equally operating expenses when the road is being managed by officers and agents of a corporation. To permit the mortgagees to suddenly place the property and its revenue beyond the reach of legal process for the collection of debts, as is done by the appointment of receivers in foreclosure proceedings, and refuse permission to the receivers to pay previously contracted obligations necessarily incurred in operation, would not only be dishonest, but injurious to the security holders, for it would destroy credit, without which railroads cannot be operated, for the nature of the business is such that immediate cash payment is impracticable. From necessity, therefore, has arisen the practice of courts of equity to apply the revenue coming to receivers in payment of lawful claims for wages, materials furnished, balances due for interchange of traffic, and all similar obligations created in the legitimate conduct of transportation business, and such practice cannot be regarded as a mere arbitrary exercise of power by the courts, but is rather the application of legal rules, founded upon necessity, and the assent of the mortgagees, implied from the circumstances of their accepting, as security for their investments, mortgages upon this kind of property, and permitting the same to remain in the possession of, and be operated on the credit system by, the mortgagors. The rules do not permit debts created by a railroad corporation in transactions outside of the scope of its legitimate business, as a carrier, to come in as preferential debts over a mortgage. A railroad corporation cannot lawfully plunge into general speculation, and in the strife to acquire control of other transportation lines, or land or other property, in places remote from its situs, burden itself with debts which may outrank in priority a previously existing mortgage upon its property.

Instead of attempting a review of the numerous adjudged cases bearing upon the points at issue, I can very well abbreviate this opinion by simply referring to the learned and able opinion of Judge Caldwell in the case of Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., and the exhaustive note by Mr. Morris M. Cohn, appended thereto (53 Fed. 182–196). It is my opinion that Judge Caldwell's decision in that case is sound, and that the principles therein enunciated must prevail as the law of this country, and I have no hesitation in following that case in this instance, except in so far as it denies the right of individual bondholders to be heard in opposition to their trustee. I will refer to but one other case, that of Trust Co. v. Morrison, 125 U. S. 591–613, 8 Sup. Ct. 1004,

which is an authority binding upon this court. In that case it was adjudged by the supreme court that where a railroad company whose property was mortgaged had sued out an injunction to restrain enforcement of a judgment which was alleged to be fraudulent, and the effect of the injunction had been to preserve its assets and business, a surety who executed an injunction bond, exacted as a condition upon which the injunction was allowed, should be regarded as having rescued the mortgaged property from destruction, and that he was entitled to be protected by having a judgment obtained against him upon the injunction bond, paid by a receiver, out of the assets of the corporation; and it was further adjudged in that case that it was not necessary for the surety to first pay the judgment before applying for relief, but that, according to the principles of equity, he was entitled to be protected without subjecting himself to the additional burden of actually paying the judgment. It is not true that the supreme court placed its decision in this case upon the ground that property of the corporation not covered by the mortgage, and primarily subject to be taken for satisfaction of claims of general creditors, had been diverted or applied for the benefit of the mortgagee. In the opinion of the court, Mr. Justice Bradley explains that the property not covered by the mortgage, which was ordered to be conveyed to the purchasers at the foreclosure sale, along with mortgaged property, had been acquired by the receiver under an order of the court appointing him, and presumably with funds of the corporation, which had come into his hands as receiver; and it is further shown, in the statement of the case, that the mortgage embraced all the property and assets of the company, real, personal, and mixed, held and owned by the company at the date of the mortgage, or thereafter to be acquired, and the tolls, incomes, rents, issues, and profits thereof, and it contained provisions authorizing the mortgage trustee to take possession of said property and assets in case of default in the payment of interest or of any installment of the sinking fund provided for. Therefore, the property not covered by the mortgage was acquired by the expenditure of funds which were, by the terms of the mortgage, subject to the lien thereof. There was a mere conversion of one kind of property into other property, by the receiver, during the pendency of proceedings to foreclose the mortgage. In the case at bar, the petitioners, by executing a supersedeas bond, protected the property of the Northern Pacific Railroad Company from abstraction, for, by the laws of Washington territory, in force at the time the judgment in favor of O'Brien was obtained, the money belonging to the railroad, on deposit in banks, or in the hands of its agents, could have been collected by garnishee process, and in that manner O'Brien could have enforced payment of his judgment, if a stay of execution had not been obtained by means of the supersedeas bond. The liability which the petitioners incurred at the time of giving the bond did not mature, so as to become a fixed liability for a definite amount, until the condition of the bond had been broken by default of the company, which was long after the assets of the railroad company had passed into the hands of receivers, in the foreclosure suit; hence this claim

is entitled to rank as a current operating expense, which has accrued since the property came into the hands of the receivers of this court.

I do not overlook the fact that authority to pay the O'Brien judgment has been petitioned for by the receivers, and that their petition has been denied by the United States circuit court for the Eastern district of Wisconsin; but I cannot regard the decision there made as a final adjudication of the matter by a court of competent jurisdiction. The petitioners herein were not parties to the proceedings. They were not accorded the right to be heard, or to appeal from the decision; therefore, they are not bound by it. That there should be harmony and consistency in the decisions of the several courts exercising jurisdiction in the administration of the affairs of the Northern Pacific Railroad in the pending foreclosure proceedings must be conceded; but I feel constrained to say that the receivers have been heretofore authorized to issue receivers' certificates for several million dollars, a large portion of which has been expended, as shown by the record, in paying off what has been termed the "floating debt" of the corporation, and I consider that there would be just grounds for reproach if the courts, while, on the one hand, permitting such liabilities to rank as preferential claims, should, on the other hand, fail to recognize the equity in the petition of these sureties. The solicitor for the Farmers' Loan & Trust Company, in acquiescing in the payment of this claim, has well said that "the holders of bonds secured by mortgages upon railroads have a direct interest in the protection to railroad property afforded by the appellate courts, and a trustee for such bondholders cannot, with fidelity to the trust, seek to close against them the courts of justice."

For the foregoing reasons, and upon the authority of the cases I have cited, I direct that an order be entered requiring the receiver of this court to pay in full the O'Brien judgment, and all costs of the suit pending against the petitioners, on or before the 31st day of December, 1895.