JONES v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 347.

1. RAILROAD MORTGAGES—PAYMENTS TO PRESERVE PROPERTY—PRIORITIES.
　　When third parties, at the request and for the benefit of the trustee in a railroad mortgage, have entered into obligations for the purpose of preserving the mortgaged property for the benefit of the bondholders, and keeping it a going concern, and are subjected to a liability arising out of

such obligations, such liability may properly be discharged out of the income or corpus of the mortgaged property for the benefit of which it was incurred.

2. SAME.

Certain property of a railroad company, which was covered by mortgages, was attached by a creditor who had secured a judgment against the company. Thereupon, in order to preserve the unity of the property, and keep the railroad a going concern, the trustee in the mortgages caused such property to be replevied, and bonds to be given, with sureties, for the return of the property. or for the payment of its value, if adjudged to be subject to the attachment. The property was ultimately adjudged to be so subject, but, in consequence of its having been taken into possession by a receiver appointed in a foreclosure suit instituted by the trustee, it was impossible for the sureties on the replevin bonds to return the property, and executions were directed to issue against them for its value. *Held* that, under these circumstances, the receiver in the foreclosure suit was properly directed to pay, out of the property in his hands, the claim of the creditor who had issued the attachment, and for whose benefit the decree against the sureties on the replevin bonds was made, although such creditor's claim was not, in itself, superior to the mortgage.

3. COURTS—JURISDICTION—ORIGINAL AND ANCILLARY.

Where a railroad foreclosure suit is pending in a United States circuit court in one district, as ancillary to a similar suit in another, the former court should not remit to the court of primary jurisdiction an incidental motion relating to transactions which took place within its own district, and to other related litigations arising there, and of which it had already taken jurisdiction.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This is an appeal from an order made by the court below directing the appellant, as receiver, to pay off and discharge the decrees entered by the same court in favor of H. Clay Evans and other creditors, complainants, against the Chattanooga, Rome & Columbus Railroad Company, and other parties, who were obligors in the replevy bonds mentioned in case No. 340,— that of Trust Co. v. Evans (in this court, which has just been decided) 73 Fed. 562; this being another litigation upon a branch of the same subject-matter. The present case was argued and submitted at the same time with No. 340, and by mutual stipulations in both the appeals the record in each is treated as part of the record in the other. In addition to the facts showing the groundwork of the controversy in the other case, it is only necessary, for the present purpose, to state that a short time previous to June 15, 1895, when the court below made the order refusing an injunction, from which the appeal in that case was taken, it ordered, upon the application of Lyerly, Sloan, and Barr & McAdoo, the sureties in the replevy bonds, that Jones, the appellant, as receiver, should show cause why he should not pay the decrees against said sureties; and, upon the coming in of the answer of the receiver, the court, on the 18th day of July, 1895, entered an order "that the said Eugene E. Jones, receiver as aforesaid, out of any money available in his hands, should pay off and discharge such judgment, or, if not in funds for such purpose, that he should, in a reasonable time, report to this court his inability to do so, and a suggestion as to the best method of raising funds for such purpose." And thereupon the receiver appealed.

Alex. C. King, for appellant.

J. H. Barr, for A. N. Sloan, C. A. Lyerly, and Barr & McAdoo.

Chas. R. Evans and Brown & Spurlock, for H. C. Evans and others.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having made the foregoing statement of the case, delivered the opinion of the court.

The burden of the complaint made by the receiver against the order of the court below directing him to pay off the decrees in favor of Evans, James, and Kratzenstein, in exoneration of the sureties, is that to do so would be to appropriate the assets in his hands, which are subject to the lien of the mortgages held by the Central Trust Company of New York, to the payment of the debts of general creditors, whose claims are, and have already been adjudged to be, subordinate to the mortgage lien. He further contends that the circuit court for the Eastern district of Tennessee, for the reason that it had jurisdiction of the foreclosure case merely as ancillary to the primary jurisdiction of the United States circuit court for the Northern district of Georgia, should have refused to entertain the application of the sureties, and should have remitted them, for redress, to the court of primary jurisdiction in Georgia. In respect to the main subject,—the question upon the merits,—it is contended that inasmuch as the claims of the creditors covered by the decree of the court below in the case of Evans et al. v. The Chattanooga, Rome & Columbus Railroad Company, and who were the obligees in the replevy bonds given to release the property of the last-named railroad company from attachment, were claims at large, without lien, and the sureties, upon satisfying the decrees, would, as it is assumed, stand simply in the place of the creditors, they would stand with claims subordinate to the lien of the mortgages given by the Chattanooga, Rome & Columbus Railroad Company to the Central Trust Company of New York, and therefore would not be entitled to have the assets covered by the mortgage diverted to the satisfaction of their claims. But the application of the sureties stands upon no such ground. Their claim is of a different character from that of the creditors whose decrees they are required to satisfy. Upon the levy of the attachment in the Evans Case, the mortgaged property was seized for the satisfaction of the debts of the Chattanooga, Rome & Columbus Railroad Company, the mortgagor. The mortgagee, with others who claimed to have interests to be protected, found it necessary to their interests to relieve the property from the attachment, and to continue its employment in the business of the road. It appears from the statements of the receiver, and indeed, is admitted on all hands, that the retention of the property under the attachment would have caused serious inconvenience in the operation of the road, and irreparable loss of revenues. The Central Trust Company of New York, in its petition in the other case, heard with this (Trust Co. v. Evans, 73 Fed. 562), for an injunction, alleges "that said property could not be taken out of the possession of the said Jones, as receiver, and put into the possession of Ewing [clerk of the court], without irreparable damage to the property and interests of the bondholders." The same reasons that now exist for the possession of the property by the receiver existed and operated with equal force at the time when the property was replevied. For those reasons the mortgage trustee and the other parties (the rail-

road companies having similar interests) gave their bonds, with Lyerly, Sloan, and Barr & McAdoo, as sureties. Thereby they obtained the restoration of the property to the corpus of the assets, and all became subject to the obligation of the bond to return the property, or to pay the value of it if the complainants in that case should obtain a decree to that effect. This result has happened. The principals in the bond cannot, or, at least, do not, return the property, nor do they satisfy the decree by payment, but seem willing that their sureties should be compelled to do that which they, as principals, obligated themselves to do. It is true that the trust company did not join as an obligor in the bond to release the attachment of James and Kratzenstein; but it was a defendant in that suit, and the bond was given in its interest. In equity, it was subject to a similar obligation to the sureties to that which it assumed in reference to Evans' claim. From what has been stated, it is obvious that this liability of the sureties was incurred for the purpose of preserving the fund which will ultimately be appropriated to the payment of the mortgage debt. It is not the case of an equity arising, as in many cases has happened, from the diversion of current income from the payment of ordinary current operating expenses to the payment of the mortgage; but it is the case of an equity arising from the saving, in a case of necessity, of the mortgaged property itself, and that upon call of the trustee, by persons who exposed themselves to liability solely for the accommodation and benefit of the beneficiaries under the mortgage,—the sureties having, so far as appears, no interest of their own to protect. The Chattanooga, Rome & Columbus Railroad Company has long been hopelessly insolvent, and we are assured by the receiver that the mortgaged property will not produce sufficient funds to pay the first of the two mortgages which the Central Trust Company of New York represents. No case has been referred to, nor are we aware of any, where the equity of a third person thus coming in and assuming a liability merely for the benefit and protection of a beneficiary, and at his solicitation, rests upon stronger ground. The rule adopted and applied in the case of Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, is a sufficient support for the order here appealed from. In that case Morrison became surety upon a bond filed in an injunction suit brought to restrain a threatened levy of execution upon some of the rolling stock of a railroad which was subject to a mortgage. By the bond he was bound to pay the debt in case the injunction should not be sustained. The injunction suit failed, and judgment was rendered against Morrison upon his bond. While the injunction suit was pending the railroad company gave Morrison a chattel mortgage upon some of its rolling stock to indemnify him against liability on his bond. This rolling stock was, however, already covered by the railroad mortgage, and Morrison never enforced it. The mortgage upon the railroad was foreclosed, and, after the decree, Morrison intervened, and asked to be protected by the payment of the judgment against him out of the proceeds of the property. During the pendency of the foreclosure proceedings the court had authorized the receiver to protect such sureties as had afforded protec-

tion to the property and assets of the company by the giving of such bonds, and for that purpose to use any net income that might be in his hands. The receiver, not having any such funds, did nothing to protect the sureties. The court below ordered that the judgment which Morrison had given his bond to pay should be paid out of the proceeds of the sale of the mortgaged property, and that order was sustained upon appeal to the supreme court of the United States. Mr. Justice Bradley, delivering the opinion of the court, said:

"The ground of the claim is that a portion of the property covered by the mortgage, being in peril of abstraction and loss, was rescued and saved to the mortgage by the act of the petitioner. It is denied that the property was in any peril, because, as contended by the respondents, it could not have been taken in execution, by reason of the prior lien of the mortgage. But it must be conceded that, until the mortgage was enforced by entry or judicial claim, the personal property of the railroad company was subject to its disposal in the ordinary course of business, and, as such, was liable to be seized and taken in execution for its debts. * * * Even if it would have been subject to the mortgage when taken on execution, nevertheless it could have been taken; and this would necessarily have disturbed, and perhaps interrupted, the operations of the railroad, by separating the property seized from the corpus of the estate. The trustees of the mortgage might have prevented such a catastrophe, it is true, by filing a bill of foreclosure, and for an injunction and receiver; but they did not choose to take this course until nearly three years afterwards. On the contrary, they allowed the railroad company to continue to use the property, and to take care of it for them, and stood by and saw Morrison (who had no interest in the matter) put his hands in the fire and rescue the rolling stock, of which they were to receive the benefit,—both directly, by receiving the property itself, without contest or controversy, and indirectly, by keeping up the railroad as a going concern. Morrison's money, or the fruits of it, has gone into their pockets."

Referring to the circumstance that the railroad company had given Morrison the mortgage to secure him, it was further observed:

"He did not attempt to enforce this mortgage, it is true, and did not have it renewed, but followed out the original idea of preserving the stock entire, and keeping up the property as a going concern. Instead of giving this mortgage, the company might, with perfect propriety, have placed funds in the hands of the sureties to enable them to protect themselves, and the transaction would not have been questioned. By not doing so, the receipts and revenues which would have been required for this purpose went, in the end, to the benefit of the bondholders."

And the case was distinguished from those where the claim was for operating expenses only, by referring to the fact that the claim then under consideration was based upon a bona fide effort made by the intervener to preserve the fund itself from waste; and the case was further distinguished from the case of the claim of an intervener to be subrogated to the lien of the judgment which was subject to the lien of the mortgage, and, after stating that the court did not understand that the claim was presented as one upon subrogation, it was said:

"The Holbrook judgment and execution could have greatly deranged the business of the company as a going concern. The rolling stock could have been seized and removed. Whether such seizure could, or could not, have been prevented by the mortgagees, is a different question. It would, at all events, have required legal proceedings, and probably serious litigation. And

this the mortgagees did not see fit to undertake. To save the property from being taken, to prevent the catastrophe which its taking would have caused, and the serious questions which would have arisen had it actually been sold, the intervener gave his bond to obtain an injunction. It was not done for the purpose of being subrogated to the questionable rights of Holbrook under his judgment; but to prevent the certain injury to the property itself which the attempted enforcement of these rights would have involved."

Another fact of much importance exists in this case which was not present in the case just cited. There the surety went upon the bond for the relief of the railroad property at the solicitation of the railroad company itself, and the mortgagee had nothing to do with the transaction. It simply had knowledge of it. Here the mortgagee intervened for the protection of its interests, and brought these sureties to the rescue of the mortgaged property,—a circumstance which manifestly makes firmer the position of the sureties in the present case. The case of Trust Co. *v.* Morrison was subsequently cited in the case of St. Louis, etc., R. Co. *v.* Cleveland, etc., R. Co., 125 U. S. 658, 8 Sup. Ct. 1011, with the cases of Fosdick v. Schall, 99 U. S. 235; Miltenberger v. Railway Co., 106 U. S. 286, 1 Sup. Ct. 140; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673; Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887,—as illustrations and instances where, owing to special circumstances, an equity arises in favor of certain classes of creditors of an insolvent railroad corporation, otherwise unsecured, by which they are entitled to outrank, in priority of payment, even on a distribution of the proceeds of the sale of the property, those who are secured by prior mortgage liens. And, indeed, the doctrine applied in Trust Co. *v.* Morrison rests upon the same foundation as that which has been applied in affording relief to unsecured creditors who have contributed to the payment of operating expenses which of right should have been paid out of current income, but which income has been applied in the payment of the mortgage debt; the substantial ground and reason for the rule being that the mortgaged property has been conserved or augmented at the expense of others acting in good faith, and whose interests have been sacrificed for that purpose.

But there is another ground upon which the right of these sureties to the relief they seek may be well supported. The Central Trust Company of New York was a principal in the bond to Evans, and was one of the defendants to the bill in which James and Kratzenstein became co-complainants. For reasons hereinbefore stated, it stood in the same equitable relation to the sureties, in reference to the claims of James and Kratzenstein, that it did in relation to that of Evans. As to it, the sureties were such in respect of all the claims. It is bound to exonerate its sureties. The rule is that each of the principals is individually bound to protect the sureties. Apgar's Adm'rs v. Hiler, 24 N. J. Law, 812; West v. Bank of Rutland, 19 Vt. 403; Riddle v. Bowman, 27 N. H. 236; Dickie v. Rogers, 7 Mart. (La.) 588. Nor is the surety obliged to wait until after he has paid the debt, but he may proceed in equity to compel the prin-

cipal to pay it. Antrobus v. Davidson, 3 Mer. 569; Wooldridge v. Norris, L. R. 6 Eq. 410; Irick v. Black, 17 N. J. Eq. 189; Thigpen v. Price, Phil. Eq. 146; Taylor v. Miller, Id. 365. And this doctrine has been recognized and affirmed in Tennessee. Greene v. Starnes, 1 Heisk. 582; Saylors v. Saylors, 3 Heisk. 525; Miller v. Speed, 9 Heisk. 196; Howell v. Cobb, 2 Cold. 104. And here the Central Trust Company would, upon such proceedings, be compelled to relieve the sureties by paying the debt. Inasmuch as the bona fides of the trustee in taking the action which has involved the sureties is not questioned, and, indeed, is apparent, what the trustee would so pay would be chargeable upon the mortgaged property, as expenses in the administration of the trust. Equity, for the purpose of avoiding circuity of action, may appropriately lay hold of the ultimate fund and appropriate it to the satisfaction of this debt for which the sureties are liable.

The contention that the court below should have turned these parties over to the United States court in Georgia for relief cannot be sustained. All the transactions out of which this controversy has grown took place in Tennessee. The creditors' suit of Evans and others was prosecuted and ripened into judgment there. The attached property was found and seized in Tennessee. The bonds given to release it were to be discharged by payment in that state. The court had already taken jurisdiction of the subject-matter. The Central Trust Company of New York was a party to the proceeding, and both the main suits were pending in that court. In that situation of affairs, the circuit court in Tennessee would not have been justified in refusing to continue to exercise its jurisdiction to complete relief.

We think the court below committed no error in proceeding for the relief of the sureties, by requiring the receiver to pay these debts. The order of the circuit court is therefore affirmed.