CITY TRUST CO. v. SEDALIA LIGHT & TRACTION CO. (MISSOURI, K. & T. RY. CO. et al., Interveners).

(District Court, W. D. Missouri, Central Division.  April 22, 1912.)

No. 2,337.

**1. RECEIVERS (§ 158\*)—CLAIMS ENTITLED TO PRIORITY OVER MORTGAGE.**

Defendant company, which operated an electric plant and street railroad, executed a mortgage to secure bonds covering all of its property and franchises, including after-acquired property and its income and earnings, and authorized the trustee in case of default to take possession of the property and appropriate said earnings. A foreclosure suit was instituted by the trustee, in which receivers were appointed who operated the property. Defendant had contracted with a railroad company to pay the latter one-half the cost of maintaining flagmen at a crossing, and the railroad company intervened, setting up a claim for sums due under the contract at the time of the appointment of the receivers. A coal company also intervened, setting up a claim for coal sold the defendant. The order appointing the receivers made no reservation in favor of other creditors. *Held* that, in the absence of special circumstances creating equities in their behalf, the claims of the interveners were not entitled to priority of payment over the mortgage debt for which such earnings were pledged.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. § 158.\*]

**2. RECEIVERS (§ 158\*)—CLAIMS ENTITLED TO PRIORITY OVER MORTGAGE.**

A street railroad company appealed from a judgment recovered against it for damages for a personal injury, giving a supersedeas bond. Pending the appeal receivers were appointed for its property, under a mortgage covering both its property and earnings, and, on affirmance of the judgment, the surety on the supersedeas bond was compelled to pay it. *Held*, that the appeal was a protection to the security of the bondholders, and that the surety was entitled to repayment from the earnings of the receivership ahead of the mortgage debt.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. § 158.\*]

In Equity.  Suit by the City Trust Company against the Sedalia Light & Traction Company.  On demurrers of complainant to bills of intervention filed by the Missouri, Kansas & Texas Railway Company, the Stanley Coal Company, and United States Fidelity & Casualty Company.  Sustained as to first two interveners, and overruled as to Casualty Company.

Harkless, Crysler & Histed, for complainant.
George F. Longan, for defendant.
Montgomery & Montgomery, for interveners.

POLLOCK, District Judge.  On March 19, 1907, defendant, the Sedalia Light & Traction Company, made, executed, and delivered to complainant as trustee its certain mortgage to secure an authorized issue of bonds in the aggregate amount of $1,500,000.  Of this amount $749,000 are issued and outstanding.  This sum is in excess of the value of all the property of defendant of every kind and nature.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The mortgage made by defendant to complainant as security for said indebtedness pledges its property and income in the following terms:

"All and singular its property, real, personal and mixed, of every kind whatsoever, now owned or hereafter acquired, including all its streets and suburban railways, all its plants and property for the generation and supply of gas and electricity for light, heat, and power, all its lands, buildings, improvements, and fixtures, all its road beds, rights of way, tracks, sidings, turnouts, bridges, culverts, rolling stock, equipments, motors, engines, dynamos, boilers, machinery, wires, poles, pipes, conduits, lamps, cables, fuel, supplies, rights, privileges, franchises, choses in action, contracts, claims, stocks, bonds, and other securities of other companies now owned by it or hereafter acquired as well in law as in equity, together with the rights, tolls, profits, and income growing out of or appertaining to said property, which shall include without restricting the generality of the foregoing grant, the railways and property described in the schedule hereto."

The mortgage further provides for taking possession of the property in case of default of performance of any of its covenants by the mortgagee, and for the distribution of the proceeds realized from a foreclosure sale thereof.

In the preservation and protection of the security pledged to it for the payment of the principal and interest on the bonds actually issued and outstanding, but not then in default, complainant did on June 10, 1910, file and present its bill in this case, praying the appointment of receivers, and E. F. Swinney and W. H. Powell were by the order of this court duly appointed receivers of all the property of defendant company pledged by the terms of said mortgage, without reservation, in favor of any creditor. Thereafter, on October 25, 1910, default having been by defendant made in the payment of interest on said bonded indebtedness, complainant filed a supplemental bill of complaint praying a foreclosure of said mortgage, an accounting of the amount due the holders of bonds outstanding, and for an order of sale of the property to satisfy the same. An account having been taken, a decree of foreclosure and sale has been entered. Meanwhile, certain creditors, including the Railway Company, the Coal Company, and the Casualty Company, have filed bills of intervention praying an accounting with defendant of the amounts due said companies as creditors, and for a decretal order directing the receivers out of money in their hands received from the operation of the properties over and above expenses to pay said claimants in preference to the right of the bondholders represented by complainant.

The nature of the demands presented by interveners asserted to be superior in point of equity to the claims of the bondholders may be briefly summarized as follows:

(1) Demand of the Railway Company. In the year 1907 defendant and the Railway Company entered into a contract by which two flagmen were employed at a crossing at joint expense. Under the terms of this contract, the Railway Company was to pay these flagmen, and each month defendant was to pay the Railway Company one-half the expenses of maintaining the same. This contract was kept and performed by defendant until about April, 1910. After that time, and until the appointment of the receivers, defendant has not paid the one-half of said expense which should have been paid by it. Also, a

small sum owing by defendant to the Railway Company for materials used in repairing the crossing in question, aggregating a total of $280.-54, which is averred by intervener to be due and unpaid from defendant, as an accounting will show. It is further averred in the operation of the street railway there has been received more than $25,-000, over and above expenses incurred, wherefore intervener prays a decree entitling it to priority in payment of its demand over the indebtedness due the bondholders.

(2) Demand of the Coal Company. This demand arises from the fact that the Coal Company sold and delivered coal to defendant between February 10, 1910, and April 8, 1910, to the amount of $1,-166.86, for which it has not been paid; that this coal was necessarily purchased and used by defendant in the operation of its property; that through the operation of the property the receipts exceed the expenses of operation in a large amount, wherefore the demand of the Coal Company for prior payment to that of the bondholders is prayed.

(3) Demand of the Casualty Company. On February 10, 1910, judgment was rendered against defendant in an action brought against it to recover for personal injuries received by plaintiff therein, who was not an employé of defendant. Defendant prosecuted an appeal to the appropriate reviewing court, and gave a supersedeas bond in the penal sum of $800 to stay the enforcement of the judgment rendered pending such appeal. Said bond was conditioned to pay all damages and costs in case the appeal was not sustained. On a review the judgment of the trial court was affirmed, and the Casualty Company, as surety on the supersedeas bond, was compelled to pay the sum of $571.79, judgment, interest, and costs, wherefore it avers its rights to be superior in point of equity to that of bondholders represented by complainant.

[1] In so far as the rights of the Railway Company and the Coal Company are concerned, they are simple contract creditors of defendant. Until their bills of intervention were filed in this suit, they had taken no steps to reduce their demands to judgment, nor to fasten any lien on the body of the property pledged to secure the bonds represented by complainant or its income. At the time said demands were first presented in their unliquidated form, the property was in the hands of receivers appointed by this court for the special purpose of conserving the security pledged to the payment of the bonded indebtedness. This property so pledged consisted, not alone of all the physical assets of defendant, but also of all profits and income derived or derivable from its operation. Hence, although it be true, as averred in the bills of intervention, a profit was made in operation, yet such profit was charged with the lien of the mortgage of which interveners had notice at the time of their dealings with defendant. As the order appointing the receivers made no reservation in favor of interveners, and as in accordance with the provisions of the mortgage the property, including the income derived or derivable from operation thereof, had passed into the possession of the court in the enforcement of the lien of the mortgage at the time the bills of intervention were filed in this suit, it is quite well settled the rights of

the bondholders under the lien of the mortgage cannot be postponed or displaced by the rights of simple contract creditors, unless, perhaps, by demands of that peculiar nature stated by Mr. Justice Shiras in Thomas v. Western Car Company, 149 U. S. 110, 13 Sup. Ct. 831, 37 L. Ed. 663, as follows:

"It is easy to see that the payment of unpaid debts for operating expenses, accrued within 90 days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interests both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, when a stoppage of the continuance of such business relations would be a probable result, in case of nonpayment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien."

Or unless such demands are based on some statute of the state in force at the date of the making of the mortgage creating a prior right in the claimant, or in case of necessary materials furnished which became part of and directly enhance the value of the mortgaged property itself in such sense as to render the sale of the mortgaged property, including the materials furnished for the benefit of the security holders, without payment for the materials so supplied inequitable. See Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895; Miltenberger v. Logansport Railway Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; Kneeland v. American Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Western Car Company, 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; V. & A. Coal Co. v. Central Railroad, etc., Company, 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068; Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717; Atlantic Trust Co. v. Dana, 128 Fed. 209, 62 C. C. A. 657.

However, in the case at bar, while it is averred the coal furnished by the Coal Company was necessary to the continued operation of the road when furnished, yet in my opinion it was not furnished by the Coal Company on the strength of any supposed equity it would thereby acquire over the rights of the bondholders as provided in the mortgage, but it was furnished on the credit of the defendant. For anything appearing in the bill it was consumed prior to the appointment of the receivers. Mr. Justice Shiras, delivering the opinion of the court in Thomas v. Western Car Co., supra, which was in part a demand for priority in payment of the rental due on cars employed by the railway company prior to the receivership, said:

"It cannot be said that in no case can indebtedness for necessary supplies which accrued before the appointment of a receiver be allowed priority to the mortgage bonds."

It was held in Miltenberger v. Logansport Railway, 106 U. S. 286, 311, 1 Sup. Ct. 140, 162 (27 L. Ed. 117), that:

"Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for

the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the corpus of the property."

It is, however, added that:

"The discretion to do so should be exercised with very great care. The payment of such debts stands prima facie on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances."

Under the circumstances of this case, in the light of authority, I am inclined to the opinion the demands of both the Railway Company and the Coal Company are in their nature such as to require their postponement to the payment of the indebtedness due the bondholders under the terms of the mortgage in suit, and as the purpose of the bills of intervention filed by said parties is to secure an order directing the receivers out of funds in their hands arising from the operation of the property or its sale, which was pledged to the bondholders as security, be first paid, that the demurrers must be sustained for want of equity.

[2] The claim of the Casualty Company, however, stands on a different footing. In that case, prior to the receivership, a judgment was rendered against defendant company. In the enforcement of this judgment its property might have been sold, and its title and possession, subject to the mortgage, passed to a third party, who could and doubtless would have operated the property not for the benefit of the bondholders, but to his own use, and in payment of his demand prior to the receivership. To avoid this loss or destruction of rights granted by defendant to the bondholders, intervener, at the request of defendant, made the supersedeas bond which operated to stay the enforcement of the judgment and allowed the property to remain in the hands of defendant to be operated by it until the case was affirmed on review, when, not being able to make the debt out of the principal on account of the receivership, the surety was compelled to and did satisfy the judgment. Surely this was such an act of protection of the security pledged to the payment of the bonds arising in operation of the property as in equity requires the Casualty Company to be paid in preference to the holders of the mortgage debt. Union Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Jones v. Central Trust Co., 73 Fed. 568, 19 C. C. A. 569; Whiteley v. Central Trust Company, 76 Fed. 74, 22 C. C. A. 67, 34 L. R. A. 303.

In Union Trust Co. v. Morrison, supra, Mr. Justice Bradley, delivering the opinion of the court, said:

"The Holbrook judgment and execution could have greatly deranged the business of the company as a going concern. The rolling stock could have been seized and removed. Whether such seizure could or could not have been prevented by the mortgagees is a different question. It would at all events have required legal proceedings, and probably serious litigation, and this the mortgagees did not see fit to undertake. To save the property from being taken to prevent the catastrophe which its taking would have caused, and the serious questions which would have arisen had it actually been sold, the intervener gave his bond to obtain an injunction. It was not done for the purposes of being subrogated to the questionable rights of Holbrook under

his judgment; but to prevent the certain injury to the property itself, which the attempted enforcement of those rights would have involved."

It follows the demurrer for want of equity to the bill of intervention of the Casualty Company must be overruled. It is so ordered.