UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES & MEXICAN TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit.　June 16, 1916.)

No. 4482.

*(Syllabus by the Court.)*

1. MORTGAGES ☞151(1)—LIENS—PRIORITY—EQUITABLE CLAIM.

Sureties on supersedeas bonds given at the request of the mortgagor to stay the collection of judgments on unsecured claims, who, by affirmance of the judgments, are compelled to pay, or become liable to pay, the claims, do not thereby secure any preference in equity over bondholders secured by a prior recorded mortgage on the property and income of the mortgagor.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 316; Dec. Dig. ☞151(1).]

2. MORTGAGES ☞151(1)—LIENS—PRIORITY—ENHANCING SECURITY.

The fact that liabilities or guaranties incurred, work done, or money or materials furnished at the request of the mortgagor preserve the mortgaged property, enhance the security of the mortgagees and keep the property operating, is no ground for displacing the prior lien of the mortgagees, because the record of the mortgage is full notice to all that such acts will ordinarily and naturally have that effect and will subject the enhanced value to the superior lien of the recorded mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 316; Dec. Dig. ☞151(1).]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Bill by the United States & Mexican Trust Company and others against the Kansas City, Mexico & Orient Railroad Company and others to foreclose a mortgage, in which the United States Fidelity & Guaranty Company intervenes. From a decree of foreclosure, allowing the claim of the intervener as a general demand, but denying it as an equitable preference over the holders of bonds secured by the mortgage, the intervener appeals. Affirmed.

Jean Madalene, of Wichita, Kan. (S. B. Amidon, of Wichita, Kan., on the brief), for appellant.

Samuel W. Moore, of Kansas City, Mo. (Samuel Untermyer, of New York City, on the brief), for appellees.

Before SANBORN and SMITH, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge.　This is an appeal by the United States Fidelity & Guaranty Company, surety on a supersedeas bond of the Kansas City, Mexico & Orient Railroad Company, from a decree of the District Court allowing its claim in proceedings to foreclose the prior mortgage on the property of the Railroad Company as a general demand, but denying it an equitable preference over the holders of the bonds secured by the mortgage. The mortgage securing the bonds covered the property, the after-acquired property, and the in-

come of the Railroad Company. It was made and recorded about February 1, 1901. On December 6, 1912, in the suit to foreclose the mortgage, a prior receivership of the property of the Railroad Company was extended over the foreclosure suit. A decree of foreclosure was rendered on February 2, 1914, in which the court adjudged that the mortgage was a first lien upon the property and income of the Railroad Company to secure the payment of bonds issued thereunder to the amount of $24,538,000, and that the property be sold, and it was subsequently sold under the decree for $6,001,000 in this foreclosure suit. The Fidelity Company intervened, and prayed that the court would order its claim to be paid out of the proceeds of the sale of the property in preference to the claims of the bondholders secured by the mortgage.

Its claim arose in this way: One Madison, on June 19, 1911, recovered a judgment in one of the district courts of Kansas against the Railway Company, on account of a personal injury caused by the negligence of servants of the company, for $9,000 and costs, from which the Railway Company appealed. At the request of the Railway Company the Fidelity Company made and filed a supersedeas bond to stay the collection of the judgment, the judgment was subsequently affirmed, and the Fidelity Company paid the penalty of the bond, $10,247.05.

[1] The first reason presented to this court for the reversal of the decree below is that the court failed to investigate, fix, and enforce the liability of the stockholders of the Railway Company to pay for their stock and to apply the payments that should thus be collected to a liquidation of the mortgage bonds. But the Fidelity Company presents this ground for relief for the first time in this court without pleading it in its intervening petition, or introducing any evidence below to sustain it, and without giving the trustee of the bondholders any notice of such a claim, or any opportunity to challenge it, or to produce evidence to defeat it in the court below. It is clearly too late to urge this contention for the first time now, and the consideration or maintenance of it by this court under these circumstances would be unjust and inequitable.

The second argument is that the judgment in Madison's personal injury suit was rendered on June 19, 1911; that at that time and when the supersedeas bond was given the Railway Company was in default in the payment of its interest on its bonds, and was insolvent; that the Fidelity Company had no knowledge of these facts; that if it had known them it would not have signed the bond, but that the holders of the bonds and coupons neither foreclosed their mortgage nor gave any notice of the financial conditions of the Railway Company to the Fidelity Company before it made its bond; and that in view of these facts they are estopped from maintaining the superior lien of their prior mortgage. The proof, however, leaves no doubt that there had been no default in the payment of the interest on the bonds when the supersedeas bond was given. All the coupons which were due, and which had been presented at their respective places of payment, had been paid. A small percentage of the bondholders had

not yet presented their overdue coupons, and those were still unpaid. Nor would the facts, if they had existed, that the Railway Company was insolvent, that the bondholders knew of this insolvency and the Fidelity Company did not, that the bondholders did not inform that company of the insolvency, and that the Fidelity Company would not have made the bond if it had been aware of the insolvency, have estopped the bondholders from enforcing the superiority of their mortgage lien. If their lien had been a secret one, there might have been some basis for a claim of an estoppel; but their mortgage was of record, and had been of record for about 10 years, and that record, under the law which made it a public record, was a flaming signal of danger that charged the Fidelity Company and all others dealing with the Railway Company with full knowledge of the terms and legal effect of the mortgage and of the bonds it secured. After the bondholders had recorded their mortgage no duty rested upon them to notify the Fidelity Company, or any other party dealing with the Railway Company, of any default in the payment of their bonds or coupons, or of any insolvency or solvency of the Railway Company. They had secured themselves against the risk of the insolvency of the Company by their mortgage, and by its record they had given all men legal notice of that fact, and of the further fact that every party who thereafter dealt with the company took its own risk of the insolvency of that company and of its inability to pay any debt or discharge any obligation it contracted in the face of the record notice of the prior and superior lien of the mortgage. The bondholders were not estopped from enforcing their superior lien by the facts or the alleged facts of this case.

[2] It is next insisted that the Fidelity Company is entitled in equity to a preference over the holders of the bonds, because its bond preserved and enhanced the value of the property to the bondholders secured by the mortgage. But the fact that liabilities or guaranties incurred, money or materials furnished, or work done at the request of the mortgagor preserve the mortgaged property and enhance the security of the mortgagees, is no ground for displacing the prior lien of the mortgagees for the reason that the record of the mortgage is plenary notice that such acts will ordinarily and naturally have that effect, and will subject the enhanced value to the superior lien of the recorded mortgage. Dunham v. Railway Company, 1 Wall. 254, 267, 17 L. Ed. 584; Railroad Co. v. Cowdrey, 11 Wall. 459, 464, 481, 482, 20 L. Ed. 199; Railway Co. v. Hamilton, 134 U. S. 296, 301, 10 Sup. Ct. 546, 33 L. Ed. 905; Porter v. Pittsburgh Bessemer Steel Co., 120 U. S. 649, 671, 7 Sup. Ct. 1206, 30 L. Ed. 830; Thompson v. Valley R. R. Co., 132 U. S. 68, 73, 74, 10 Sup. Ct. 29, 33 L. Ed. 256; Morgan's Co. v. Texas Central Ry., 137 U. S. 171, 195, 11 Sup. Ct. 61, 34 L. Ed. 625; Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 259, 296, 20 Sup. Ct. 347, 44 L. Ed. 458; Lackawanna, etc., Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 315, 316, 20 Sup. Ct. 363, 40 L. Ed. 475; Illinois Trust & Sav. Bank v. Doud, 105 Fed. 123, 124, 136, 44 C. C. A. 389, 390, 402, 52 L. R. A. 481; International Trust Co. v. T. B. Townsend, etc., Co., 95 Fed. 850, 863

37 C. C. A. 396, 409. The dominant rule that runs through and controls this case, and all other cases upon this subject, is thus stated by the Supreme Court in Dunham v. Railway Company, 1 Wall. 254, 267, 17 L. Ed. 584:

"Contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance; but, if he had, and one had been executed and delivered, the rule would be the same. Registry of the first mortgage was notice to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship upon the contractor, as he must have known, when he accepted the agreement, that he took the road subject to the rights of the bondholders. Acting, as he did, with a full knowledge of all the circumstances, he has no right to complain if his agreement is less remunerative than it would have been if the bondholders had joined with the company in making the contract. No effort appears to have been made to induce them to become a party to the agreement, and it is now too late to remedy the oversight."

Finally counsel argue that the fact that the Fidelity Company gave a supersedeas bond and thereby prevented Madison from levying an execution on the property of the Railway Company, and thereby interrupting the running of the railroad, entitles it to an equitable preference over the bondholders secured by the prior mortgage, and in support of this position a consideration of these authorities is invoked. Union Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825; Farmers' Loan & Trust Co. v. Northern Pacific R. Co. (C. C.) 71 Fed. 245; Jones v. Central Trust Co., 73 Fed. 568, 571, 19 C. C. A. 569; City Trust Co. v. Sedalia Light & Traction Co. (D. C.) 195 Fed. 845, 849. An examination of these cases discloses little support for the position of the appellant. The opinion and decision in City Trust Co. v. Sedalia Light & Traction Co. (D. C.) 195 Fed. 845, 849, sustains that position. But that opinion and decision was rendered by Judge Pollock, the same judge whose decision in the case in hand that the surety on this supersedeas bond is not entitled to an equitable preference over the bondholders secured by the mortgage is now in issue, and his opinion in the case in 195 Fed. 845, was contrary to the opinion of Judge Brewer, afterwards Mr. Justice Brewer of the Supreme Court, in Blair, Trustee, v. St. Louis, H. & K. R. Co. (C. C.) 23 Fed. 523, which was rendered in 1885 and has been the prevailing rule in this circuit from that time to the present. As Judge Pollock has come to a different conclusion in the case before us, his decision in 195 Fed. 845, is entitled to no farther consideration. All the other authorities quoted above were rendered before that long and notable line of decisions of the Supreme Court commencing with Kneeland v. American Loan Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379, and including Morgan's L. & T. R. Co. v. Texas Central Ry. Co., 137 U. S. 171, 196, 198, 11 Sup. Ct. 61, 34 L. Ed. 625, Thompson v. Valley R. Co., 132 U. S. 68, 71, 73, 10 Sup. Ct. 29, 33 L. Ed. 256, Thomas v. Western Car Co., 149 U. S. 95, 110, 13 Sup. Ct. 824, 37 L. Ed. 663, Southern Railway Co. v. Carnegie Steel Co., 176 U. S. 257, 296, 20 Sup. Ct. 347, 44 L. Ed. 458, Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 315, 20 Sup. Ct. 363, 40 L. Ed. 475, and later cases of the same nature, nar-

rowed and limited the class of cases entitled to an equitable preference over prior mortgages to those incurred for the necessary current expenses of the operation of the mortgaged property in the ordinary course of business within a limited time anterior to the impounding of the property by the receiver for the benefit of the mortgagees. The influence and authority of these earlier decisions is far less than those of the modern opinions which conform to the rule established by the later authorities from the Supreme Court.

The opinion and decision in Union Trust Company v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825, when carefully read, fails, as was demonstrated by Judge Lurton, afterwards Mr. Justice Lurton of the Supreme Court, in Whiteley v. Central Trust Co., 76 Fed. 74, 77, 22 C. C. A. 67, 34 L. R. A. 303, to sustain the proposition that a surety who, at the request of the mortgagor, signs a supersedeas or other bond in reliance upon the solvency of the mortgagor, and in the belief and expectation that it will pay any loss the surety sustains out of its income or property, is entitled to any preference in equity over the bonds secured by the prior mortgage. It was not based upon that proposition but was founded on special equities which do not exist in this case, or in any ordinary case involving an alleged preferential equity of a surety upon a supersedeas bond.

Nor does the decision and opinion of the court in Jones v. Central Trust Company, 73 Fed. 568, 19 C. C. A. 569, sustain the contention of the surety. In that case an attachment had been levied upon some mortgaged property. Thereupon the trustee in the mortgages caused the property to be replevied, and brought the sureties to sign the replevin bonds. Because the trustee induced and caused the sureties to make the bonds, the court held that the sureties were entitled to an equitable preference over the trustee and over the bondholders he represented in payment out of the mortgaged property. The case rests upon the fact that the trustee for the bondholders induced the sureties to sign. 73 Fed. 571, 573, 19 C. C. A. 569. Neither the trustee nor any of the bondholders solicited or caused the Fidelity Company to sign the bond in the case at bar.

Of the cases cited by counsel for the surety there remains Farmers' Loan & Trust Co. v. Northern Pacific R. Co. (C. C.) 71 Fed. 245. In that case Griggs and Foster had signed a supersedeas bond to stay the execution of a judgment against the Northern Pacific Railroad Company for a personal injury. The appeal was dismissed, and the judgment became final, after receivers of the property of the Railroad Company had been appointed. At that time there was a rivalry between the judge of the Eastern district of Wisconsin, the court of original jurisdiction, and the judge of the district of Washington, one of the courts of ancillary jurisdiction, over the administration of the property of this railroad. Judge Caldwell had delivered his opinion in Farmers' Loan & Trust Co. v. Kansas City, W. N. W. Ry. Co. (C. C.) 53 Fed. 182, in which he had in effect held that any meritorious claims of unsecured creditors might, in the discretion of the judge administering the property, be given a preference in payment out of the income, or out of the proceeds, of mortgaged property over

the claims of bondholders secured by a prior mortgage. The Supreme Court, not without knowledge of that opinion, had expressly held, and rather sternly insisted upon, the established contrary rule in Kneeland v. American Loan Co., 136 U. S. 89, 97, 10 Sup. Ct. 950, 953 (34 L. Ed. 379), and had said:

"The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when the court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

In this state of the decisions the receivers applied to Judge Jenkins in the Wisconsin district for authority to pay the claim against the sureties on the supersedeas bond out of the income of the property in their hands in preference to the claims of the mortgage bondholders. Judge Jenkins reviewed the decision of Judge Caldwell and that of the Supreme Court in Kneeland v. Loan Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379, held that the decision of Judge Caldwell was "in direct antagonism to the rulings of the Supreme Court," that he could not follow it, and denied the petition of the receivers. Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C. C.) 68 Fed. 36, 39. Thereupon the sureties, Griggs and Foster, applied to the District Court of Washington in the same foreclosure suit, for preferential payment of the same claim, and Judge Hanford, although he was aware of Judge Jenkins' decision to the contrary (71 Fed. 246), referred to Judge Caldwell's opinion in 53 Fed. 182, 196, said:

"It is my opinion that Judge Caldwell's opinion in that case is sound, and that the principles therein enunciated must prevail as the law of this country, and I have no hesitation in following that case in this instance." Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C. C.) 71 Fed. 245, 246, 248.

On the authority of Judge Caldwell's decision he gave the claim of the sureties a preference in payment over the claims of the mortgage bondholders, notwithstanding the decisions of the Supreme Court.

This decision of Judge Hanford is the only decision cited by counsel for the Fidelity Company which is in point upon the issue in the case in hand. It lacks the support of reason and of authority, and the argument in it is not persuasive.

There is no equity in the claim of this surety to be preferred in payment out of the mortgaged property to the holders of the bonds. The mortgage was made and recorded a decade before the surety signed its bond. That mortgage was made and recorded for the express purpose of giving to the bondholders secured thereby a first lien upon the mortgaged property and a preference in payment out of the income and out of the proceeds of the property mortgaged. Such a preference was secured by the express terms of the contract made between the mortgagor, the trustee and the bondholders. Probably some of the bonds had been repeatedly sold between the time when they were issued and the date when the supersedeas bond was given. The purchasers bought them in reliance upon the first lien upon the property of the railway company evidenced by the recorded mortgage. They had no notice or knowledge that the Fidelity Company was acquiring or seeking to acquire a lien superior to their own. The Fidelity Company gave them no notice of its attempt so to do, and no opportunity to protect or defend themselves against it until, if its preferential lien exists at all, it has become perfect. On the other hand, the Fidelity Company, before and at the time it assumed its liability, had full knowledge by the record of the mortgage, first, that the bondholders had a first lien upon the mortgaged property; second, that the only parties that could waive that lien, or make a lawful contract to give another superior to it, were the trustee and the bondholders, and that the mortgagor was powerless to do so. Notwithstanding this knowledge the Fidelity Company neither sought nor secured any contract from the trustee or the bondholders. In the face of all this knowledge, it voluntarily signed the supersedeas bond and assumed its liability in reliance upon and at the risk of the ability of the mortgagor to protect and indemnify it, and it cannot now successfully appeal to a court of equity to throw that risk and the burden thereof upon the mortgage bondholders. Its equity is far inferior to theirs.

The contention that by means of the bond property was preserved, and the assets that came to the hands of the bondholders were increased by the amount of the judgment which the bond prevented the judgment creditor from collecting, is fallacious. The judgment was inferior in lien to the mortgage, and nothing which was subject to the mortgage could have been taken from the bondholders by a levy and sale under the judgment. If the execution would have been levied upon property upon which the bondholders had no lien, the taking of that property would not have diminished their security, and if it would have been levied upon property subject to their lien, their mortgage would have held that property. And even if it were true that the surety, by its bond to pay the judgment, preserved security or property which subsequently came to the bondholders, and which they otherwise would have lost, that fact would not give the surety a preferential equity over the bondholders. If it would, then every unsecured

creditor, whose moneys, labor, material, or guaranty aided to preserve or enhance the value of the mortgaged property, might, by delaying collection of the mortgagor's debts, secure an equitable lien superior to that of the mortgage, and every creditor, whose claim, like that of Madison here, neither preserved nor enhanced the value of the mortgaged property, could give that claim a preferential lien by hiring some surety company for a small percentage of his claim to guarantee its payment. If the argument of counsel for the Fidelity Company could be sustained, its practical effect would be to strike down the security of every railroad mortgage, and to give to unsecured creditors liens superior to those of the creditors who by mortgage bonds, in reliance upon recorded mortgages, secure their payment. The law and equity, the written contract evidenced by the mortgage and its record, and the relative equities of the parties, cry out alike against the payment out of the income or the proceeds of the mortgaged property of the claim of a surety on a bond of a mortgagor in preference to the claims of bondholders secured by a prior mortgage. A mortgagor and his sureties cannot, by making a contract or bond with an unsecured creditor to pay the mortgagor's debt to him, transform his unsecured claim into a claim secured by a lien superior to that of bondholders secured by a prior recorded lien, and so are the authorities. Blair v. St. Louis, etc., Ry. Co. (C. C.) 23 Fed. 523; Farmers' Loan & Trust Co. v. Northern Pacific R. Co., (C. C.) 68 Fed. 36, 39; Whiteley v. Central Trust Co., 76 Fed. 74, 77, 78, 22 C. C. A. 67, 34 L. R. A. 303; Central Trust Co. v. Third Ave. Ry. Co., 180 Fed. 710, 711, 103 C. C. A. 492; Pennsylvania Steel Co. v. New York City Ry. Co. (C. C.) 165 Fed. 485; Gay v. Hudson River Elec. Power Co. (C. C.) 182 Fed. 904, 909.

The decree below is affirmed.